**F I L E D**
CLERK, U.S. DISTRICT COURT

4/20/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>VIOLETTA MAILYAN,<br><br>             Defendant. | No. CR 2:25-00837(A)-HDV<br><br>A M E N D E D<br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1518: Attempted<br>Obstruction of Criminal<br>Investigations of Health Care<br>Offenses; 18 U.S.C.<br>§ 981(a)(1)(C), and 28 U.S.C.<br>§ 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. §§ 1343, 2]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

Defendant

1.   Defendant VIOLETTA MAILYAN was a physician licensed in California and a resident of Los Angeles County.

Related Entity

2.    Healthy Way Medical Center ("Healthy Way") was a medical clinic owned and operated by defendant MAILYAN, located at 628 East Colorado Street, Glendale, California 91205. Defendant MAILYAN was the chief executive officer, secretary, and sole director of Healthy Way. Defendant MAILYAN was the only rendering provider for Healthy Way.

The Medicare Program

3.    Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years of age and older, as well as individuals who were disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

4.    Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

5.    Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."

6.    Medical clinics, physicians, and other health care providers that provided services to beneficiaries that were reimbursed by Medicare were referred to as "providers."

7.    To be eligible to participate in Medicare, Medicare required prospective providers to be licensed by a state or local agency. After obtaining the applicable license, Medicare required prospective providers to submit an application in which the prospective provider agreed: (a) to comply with all Medicare-related laws and regulations, and (b) not to submit claims for payment to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of

2

their truth or falsity.  If Medicare approved the application, Medicare assigned the provider an identifying number, which enabled the provider to submit claims to Medicare for reimbursement for items and services provided to Medicare beneficiaries.

8.   Most providers submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

9.   Medicare processed claims submitted electronically by providers using a server in North Dakota.

10.  Medicare was divided into different program "parts": Part A, Part B, Part C, and Part D.

Botox Services

11.  Medicare Part B covered injections of botulinum toxin (commonly referred to as "Botox") to treat spasticity or excessive muscular contractions.  For Botox to be covered by Medicare, the physician was required to establish that the patient had been unresponsive to conventional methods such as medication, physical therapy, and other appropriate measures to control or treat spastic conditions.  An exception to this general rule was that for certain conditions, including focal dystonia, hemifacial spasm, orofacial dyskinesia, blepharospasm, severe writer's cramp, laryngeal spasm, or dysphonia, Botox could be an initial mode of therapy, and in these circumstances, it was not necessary to show that other methods of treatment had been tried and proven unsuccessful.  However, the patient's medical record was required to contain documentation that fully supported the medical necessity for Botox injections.  This

3

documentation included, but was not limited to, relevant medical history and results of pertinent diagnostic tests or procedures.

12. Medicare Part B also covered Botox injections to treat chronic migraines (15 or more days per month with a headache lasting four hours a day or longer). There were thirteen different diagnosis codes for migraines that were approved to cover Botox if the conventional methods were unsuccessful.

13. Providers used Current Procedural Terminology ("CPT") codes to bill Medicare for Botox services. CPT Code J0585 was used for one unit of Botox medication. CPT Code 64615 was used for the service of injecting Botox.

14. Use of Botox to treat skin wrinkles was cosmetic and not covered by Medicare.

B.   THE SCHEME TO DEFRAUD

15. Beginning no later than in or around January 2019, and continuing through at least in or around August 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAILYAN, together with others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Medicare, and to obtain money and property from Medicare by means of material false and fraudulent pretenses, representations, and promises.

16. The scheme operated, in substance, as follows:

a.   Defendant MAILYAN caused Healthy Way to submit false and fraudulent claims to Medicare for Botox injections using CPT codes J0585 and 64615 and listing defendant MAILYAN as the rendering provider where the Botox injections were medically

4

unnecessary and/or never provided.  These claims included claims for instances on which defendant MAILYAN had purportedly provided Botox injections at Healthy Way:

i.  to beneficiaries who were in fact traveling outside the United States on the purported dates of service;

ii.  on dates when defendant MAILYAN was in fact traveling outside the United States;

iii. on dates when defendant MAILYAN was in fact traveling outside California;

iv.  to a beneficiary who was in fact in the custody of the U.S. Bureau of Prisons on the purported dates of service;

v.  on dates when Healthy Way was in fact closed; and

vi.  on dates before the beneficiary first contacted Healthy Way about receiving Botox injections from defendant MAILYAN.

b.  To further and conceal her scheme, defendant MAILYAN fabricated and caused to be fabricated patient medical records to, among other things, falsely reflect that beneficiaries billed by Healthy Way to Medicare for Botox injections suffered from chronic migraines when, in fact, the beneficiaries did not.

c.  Defendant MAILYAN diverted and caused to be diverted the proceeds of the fraudulent scheme to benefit herself and others, including by purchasing luxury goods and real property.

17.  Pursuant to the scheme, between in or around January 2019 and in or around August 2025, defendant MAILYAN, along with others known and unknown to the Grand Jury, through interstate wire transmissions, submitted and caused to be submitted approximately $45,119,889 in false and fraudulent claims to Medicare for Botox injections purportedly provided by defendant MAILYAN, of which Medicare paid approximately $32,897,989.

D.    USE OF THE WIRES

18.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant MAILYAN, together with others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following false and fraudulent claims by means of wire communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| ONE | 9/14/2021 | Submission of claim number 551121257217310, line 2, in the approximate amount of $1,180.00 for Botox purportedly provided on 8/25/2021 to beneficiary E.T.O. from Healthy Way in California to Medicare via server in North Dakota. |
| TWO | 12/23/2021 | Submission of claim number 551121357073540, line 2, in the approximate amount of $1,180.00 for Botox purportedly provided on 6/21/2021 to beneficiary A.K. from Healthy Way in California to Medicare via server in North Dakota. |
| THREE | 10/4/2022 | Submission of claim number 551122277257830, line 4, in the approximate amount of $1,280.00 for Botox purportedly provided on 3/7/2022 to beneficiary E.T.O. from Healthy Way |

6

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| | | in California to Medicare via server in North Dakota. |
| FOUR | 4/25/2024 | Submission of claim number 551124116359700, line 5, in the approximate amount of $980.00 for Botox purportedly provided on 3/18/2024 to beneficiary L.B. from Healthy Way in California to Medicare via server in North Dakota. |
| FIVE | 6/11/2024 | Submission of claim number 551124163463580, line 2, in the approximate amount of $980.00 for Botox purportedly provided on 6/3/2024 to beneficiary E.T.O. from Healthy Way in California to Medicare via server in North Dakota. |
| SIX | 10/14/2024 | Submission of claim number 551924288083970, line 1, in the approximate amount of $980.00 for Botox purportedly provided on 9/3/2024 to beneficiary J.A. from Healthy Way in California to Medicare via server in North Dakota. |
| SEVEN | 11/07/2024 | Submission of claim number 551124312117840, line 2, in the approximate amount of $980.00 for Botox purportedly provided on 9/15/2024 to beneficiary A.A. from Healthy Way in California to Medicare via server in North Dakota. |
| EIGHT | 11/14/2024 | Submission of claim number 551124319088112, line 2, in the approximate amount of $980.00 for Botox purportedly provided on 11/25/2023 to beneficiary S.Y. from Healthy Way in California to Medicare via server in North Dakota. |
| NINE | 11/14/2024 | Submission of claim number 551124319088120, line 2, in the approximate amount of $980.00 for Botox purportedly provided on 6/10/2024 to beneficiary S.Y. from Healthy Way in California to Medicare via server in North Dakota. |

COUNTS TEN THROUGH TWELVE

[18 U.S.C. §§ 1518, 2]

19.  The Grand Jury realleges paragraphs 1 through 14 and 16 through 18 of this First Superseding Indictment here.

20.  On or about September 30, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAILYAN, together with others known and unknown to the Grand Jury, aiding and abetting one other, willfully attempted to prevent, obstruct, mislead, and delay the communication of information and records relating to a violation of a Federal health care offense to a criminal investigator duly authorized by the Department of Health and Human Services, Office of Inspector General, an agency of the United States, to conduct and engage in investigations for prosecutions for violations of health care offenses, namely, by providing and willfully causing to be provided the following false medical records making it appear as if the services billed to Medicare had been provided and were medically necessary, when in fact they had not been provided and were medically unnecessary:

| COUNT | ENTRY |
|---|---|
| TEN | A false medical record for purported Botox treatment of chronic migraines to Medicare beneficiary E.T.O on or about March 7, 2022. |
| ELEVEN | A false medical record for purported Botox treatment of chronic migraines to Medicare beneficiary S.Y. on or about November 25, 2023. |
| TWELVE | A false medical record for purported Botox treatment of chronic migraines to Medicare beneficiary L.B. on or about March 16, 2024. |

8

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of the counts One through Nine of this First Superseding Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses, including but not limited to the following:

    i.    One Tesla, Model X with Vehicle Identification Number 7SAXCDE53NF337646;

    ii.   One 2024 Tesla Cybertruck with Vehicle Identification Number 7G2CEHEE2RA017182;

    iii.  $147,439.60 from Bank of America Account Number x9499;

    iv.   $25,248.09 from Bank of America Account Number x3353;

    v.    $13,653.96 from Bank of America Account Number x0160;

    vi.   $10,135.89 from Bank of America Account Number x2275;

9

vii.   $10,068.43 from Bank of America Account Number x8689;

viii.   $10,068.43 from Bank of America Account Number x9838;

ix.   $14,391.44 from Golden State Bank Account Number x8790;

x.   All funds and financial Instruments held in Merrill Lynch Account Number x4569;

xi.   All funds and financial Instruments held in Merrill Lynch Account Number x3A13;

xii.   $320.53 from Merrill Lynch Account Number x3A13;

xiii.   All funds and financial Instruments held in Merrill Lynch Account Number x1Q82;

xiv.   All funds and financial Instruments held in Merrill Lynch Account Number x1Q81;

xv.   All funds and financial Instruments held in Merrill Lynch Account Number x3K65;

xvi.   $106.14 from Merrill Lynch Account Number x3K65;

xvii.   All funds and financial Instruments held in Merrill Lynch Account Number x1Q79;

xviii.   All funds and financial Instruments held in Merrill Lynch Account Number x3331;

xix.   $43.11 from Merrill Lynch Account Number x3331;

xx.   All funds and financial Instruments held in Merrill Lynch Account Number x4416;

10

xxi. $1,075.10 from Merrill Lynch Account Number x4416;

xxii. All funds and financial Instruments held in Merrill Lynch Account Number x4423;

xxiii. $341.70 from Merrill Lynch Account Number x4423;

xxiv. All funds and financial instruments held in Merrill Lynch Account Number x7F65;

xxv. $2,079.04 from Merrill Lynch Account Number x7F65;

xxvi. All funds and financial instruments held in Charles Schwab Account Number x6139;

xxvii. $4,969.06 from Charles Schwab Account Number x6139;

xxviii. The real property located at 114 Surfside Avenue Unit A in Surfside, California with Assessor Parcel Number 178-462-06;

xxix. The real property located at 623 West Dryden Street in Glendale California with Assessor Parcel number 5635-003-005;

xxx. The real property located at 628 East Colorado Street in Glendale California with Assessor Parcel Number 5674-025-003;

xxxi. The real property located at 633 East Colorado Street in Glendale, California with Assessor Parcel Number 5674-018-029;

11

xxxii.    The real property located at 1123 and 1121 East Colorado Boulevard with Assessor Parcel Numbers 5674-021-009 & 5674-021-008; and

xxxiii.    The real property located at 1545 Cleveland Road in Glendale, California with Assessor Parcel Number 5629-007-027.

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially

//

//

12

diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_____

Foreperson

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

LORINDA LARYEA
Acting Chief, Fraud Section
U.S. Department of Justice

SANDOR A. CALLAHAN
Trial Attorney, Fraud Section
United States Department of Justice

13